FILED
2014 Dec-23  PM 01:40
U.S. DISTRICT COURT
N.D. OF ALABAMA

**UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION**

| | |
|---|---|
| **TERRI BANKS SMITH,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| **vs.** ) | **Case Number 5:13-cv-1412-SLB** |
| ) | |
| **CAROLYN W. COLVIN, Acting** ) | |
| **Commissioner of Social Security,** ) | |
| ) | |
| **Defendant.** ) | |

**MEMORANDUM OPINION**

Plaintiff Terri Banks Smith brings this action pursuant to 42 U.S.C. § 405(g), seeking review of the final decision of the Commissioner of Social Security denying her application for a period of disability and disability insurance benefits ["DIB"]. Upon review of the record, the submissions of the parties, and the relevant law, the court is of the opinion that the Commissioner's decision is due to be affirmed.

**I. PROCEDURAL HISTORY**

Plaintiff initially filed an application for a period of disability and DIB on December 17, 2010, alleging a disability onset date of January 31, 2010. (R. 185.)[1] This application was denied on June 3, 2011 by the Social Security Administration ["SSA"]. (R. 108.) Subsequently, plaintiff requested a hearing before an Administrative Law Judge ["ALJ"],

---

[1] Reference to a document number, ["Doc.___"], refers to the number assigned to each document as it is filed in the court's record. References to page numbers in the Commissioner's record are set forth as ["R.___"].

which was held on March 27, 2012. (R. 114, 144.) After the hearing, the ALJ found that, while plaintiff was unable to perform any past relevant work, she was capable of making a vocational adjustment to other occupations, such as inspector, sorter, and gluer, which are jobs that exist in significant numbers in the national economy. (R. 47-48.) In light of these findings, the ALJ denied plaintiff's request for a period of disability and DIB on May 31, 2012. (R. 48.)

On June 20, 2012, plaintiff petitioned the Appeals Council to review the ALJ's decision. (R. 27.) On July 1, 2013, the Appeals Council denied plaintiff's request for review. (R. 1.) Therefore, the ALJ's decision is the final decision of the Commissioner of Social Security. (*Id*.) Following denial of review by the Appeals Council, plaintiff filed an appeal in this court on July 31, 2013. (Doc. 1.)

## II.  <u>STANDARD OF REVIEW</u>

In reviewing claims brought under the Social Security Act, this court "is limited to an inquiry into whether there is substantial evidence to support the findings of the Commissioner, and whether the correct legal standards were applied." *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002); *see also Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir. 1988). The court gives deference to factual findings and reviews questions of law de novo. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991). The court "may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner]; rather the court must scrutinize the record as a whole to determine if the decision reached is

reasonable and supported by substantial evidence." *Martin v. Sullivan*, 894 F.2d 1520, 1529

(11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983))

(internal quotations and other citation omitted). "The Commissioner's factual findings are

conclusive if supported by substantial evidence." *Wilson*, 284 F.3d at 1221 (citing *Martin*,

894 F.2d at 1529; *Allen v. Bowen*, 816 F.2d 600, 602 (11th Cir. 1987)). "Substantial evidence

is more than a scintilla and is such relevant evidence as a reasonable person would accept as

adequate to support a conclusion." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178

(11th Cir. 2011) (internal quotations and citations omitted).

Conclusions of law made by the Commissioner are reviewed de novo. *Cornelius*, 936

F.2d at 1145. "[N]o . . . presumption of validity attaches to the [Commissioner's] conclusions

of law." *Wiggins v. Schweiker*, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.  DISCUSSION

### A. THE FIVE-STEP EVALUATION

The regulations require the Commissioner to follow a five-step sequential evaluation

to determine whether a claimant is eligible for a period of disability and DIB.[2] *See* 20 C.F.R.

---

[2] The Regulations state:

> The sequential evaluation process is a series of five "steps" that we follow in a set
> order. . . . If we can find that you are disabled or not disabled at a step, we make
> our determination or decision and do not go on to the next step. If we cannot find
> that you are disabled or not disabled at a step, we go on to the next step. Before we
> go from step three to step four, we assess your residual functional capacity. . . . We
> use this residual functional capacity assessment at both step four and step five
> when we evaluate your claim at these steps.

§ 404.1520(a)(1)-(2); *Bowen v. City of New York*, 476 U.S. 467, 470 (1986). For the purposes of this evaluation, the meaning of disability is the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 416(i)(1); 42 U.S.C. § 423(d)(1)(A). The specific steps in the evaluation process are as follows:

### 1. Substantial Gainful Employment

First, the Commissioner must determine whether the claimant is engaged in "substantial gainful activity." *Bowen v. Yuckert*, 482 U.S. 137, 137 (1987).[3] If the claimant is engaged in substantial gainful activity, the Commissioner will find that the claimant is not

---

20 C.F.R. § 404.1520(a)(4).

[3] The Regulations define "substantial gainful activity":

> (a) *Substantial work activity*. Substantial work activity is work activity that involves doing significant physical or mental activities. Your work may be substantial even if it is done on a part-time basis or if you do less, get paid less, or have less responsibility than when you worked before.

> (b) *Gainful work activity*. Gainful work activity is work activity that you do for pay or profit. Work activity is gainful if it is the kind of work usually done for pay or profit, whether or not a profit is realized.

> (c) *Some other activities*. Generally, we do not consider activities like taking care of yourself, household tasks, hobbies, therapy, school attendance, club activities, or social programs to be substantial gainful activity.

20 C.F.R. § 404.1572.

disabled, regardless of the claimant's medical condition or her age, education, and work experience.  20 C.F.R. § 404.1520(b); § 416.920(b). "Under the first step, the claimant has the burden to show that she is not currently engaged in substantial gainful activity." *Reynolds-Buckley v. Comm'r of Soc. Sec.*, 457 F. App'x 862, 863 (11th Cir. 2012).[4]

The ALJ found that plaintiff had not engaged in substantial gainful activity since January 31, 2010, the alleged onset date. (R. 38.)

**2. Severe Impairments**

If the claimant is not engaged in substantial gainful activity,  the Commissioner must next determine whether the claimant suffers from a severe impairment or combination of impairments that significantly limits the claimant's physical or mental ability to do basic work activities.  20 C.F.R. § 404.1520(a)(4)(ii), (c); § 416.920(a)(4)(ii), (c). "[A] 'physical or mental impairment' is an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); § 1382c(a)(3)(D). The regulations provide: "[I]f you do not have any impairment or combination of impairments which significantly limits your physical or mental ability to do basic work activities, we will find

---

[4] Eleventh Circuit Rule 36-2 provides, in pertinent part, "An opinion shall be unpublished unless a majority of the panel decides to publish it.  *Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority*."  11th Cir. R. 36-2 (emphasis added).

that you do not have a severe impairment and are, therefore, not disabled.  We will not consider your age, education, and work experience." 20 C.F.R. § 404.1520(c); § 416.920(c).

An impairment is "severe" if it "significantly limits [a] claimant's physical or mental ability to do basic work activities."[5] *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997); 20 C.F.R. § 404.1520(c); 20 C.F.R. § 404.1521(a). When an impairment "is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience," it will be classified as non-severe. *Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984); *see also* SSR 85-28, 1985 WL 56856 (1985). A claimant may be found disabled based on a combination of impairments even though none of the individual impairments alone are disabling. *Walker v. Bowen*, 826 F.2d 996, 1001 (11th Cir. 1987); *see also* 20 C.F.R. § 404.1523; § 416.923. A claimant has the burden to show that she has a severe impairment or combination of impairments. *Reynolds-Buckley*, 457 F. App'x at 863.

---

[5] Basic work activities include:

> (1) Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling; (2) [c]apacities for seeing, hearing, and speaking; (3) [u]nderstanding, carrying out and remembering simply instructions; (4) [u]se of judgment; (5) [r]esponding appropriately to supervision, co-workers and usual work situations; and (6) [d]ealing with changes in a routine work setting.

20 C.F.R. § 404.1521(b)(1)-(6).

The ALJ found that plaintiff had the following severe impairments: "bilateral carpal tunnel syndrome (CTS), osteoarthritis of the bilateral knees, hypothyroidism due to Graves' disease,[6] lumbar degenerative disc disease (DDD), depressive disorder and pain disorder." (R. 38.)

### 3. The Listings

If the claimant has a severe impairment, the Commissioner must then determine whether the claimant's impairment meets the duration requirement and whether it is equivalent to any one of the listed impairments. 20 C.F.R. § 404.1520(a)(4)(iii), (d)-(e); § 404.1525; § 404.1526. Listed impairments are so severe that they prevent an individual from performing substantial gainful activity. 20 C.F.R. § 416.920(a)(4)(iii), (d)-(e); *see* 20 C.F.R. pt. 404, Subpart P, Appendix 1 [The Listings]. If the claimant's impairment meets or equals a Listing, the Commissioner must find the claimant disabled, regardless of the

---

[6] "Graves' disease is an immune system disorder that results in the overproduction of thyroid hormones," *Graves' Disease*, MAYO CLINIC, http://www.mayoclinic.org/diseases-conditions/graves-disease/basics/definition/con-2002 5811 (last visited Dec. 2, 2014), and is the most common cause of hyperthyroidism, *Hyperthyroidism*, MEDLINEPLUS: A SERVICE OF THE NAT'L INST. OF HEALTH, http://www.nlm.nih.gov/medlineplus/hyperthyroidism.html (last visited Dec. 2, 2014). The ALJ found that plaintiff suffered from hypothyroidism due to Graves' disease, (R. 38), and at least one other report refers to plaintiff's hypothyroidism, (*see* R. 401). Dr. Bobby Johnson had previously diagnosed plaintiff with hyperthyroidism. (R. 348.) It is unclear if only one thyroid diagnosis is accurate, or if plaintiff experienced both hypothyroidism and hyperthyroidism at different times.

claimant's age, education, and work experience. 20 C.F.R. § 404.1520(d); § 416.920(d). The claimant has the burden of proving that her impairment meets or equals the criteria contained in one of the Listings. *Reynolds-Buckley*, 457 Fed. Appx. at 863.

The ALJ found that plaintiff did not have an impairment or combination of impairments that met or medically equaled a Listing. (R. 39.) Specifically, the ALJ found that medical evidence did not establish impairments equaling listings 1.02 (major dsyfunction of a joint(s) due to any cause), 1.04 (disorders of the spine), 12.04 (affective disorder), or 12.07 (somatoform disorders). (R. 39-41.)

### 4. Residual Functional Capacity and Past Relevant Work

If the impairment does not meet or equal the criteria of a Listing, the claimant must prove that her impairment prevents her from performing her past relevant work. *See* 20 C.F.R. § 404.1520(a)(4)(iv), (f); § 416.920(a)(4)(iv), (f). At step four, the Commissioner "will first compare [the Commissioner's] assessment of [the claimant's] residual functional capacity ["RFC"] with the physical and mental demands of [the claimant's] past relevant work." 20 C.F.R. § 404.1560(b); § 416.960(b). "Past relevant work is work that [the claimant has] done within the past 15 years, that was substantial gainful activity, and that lasted long enough for [her] to learn to do it." 20 C.F.R. § 404.1560(b)(1); § 416.960(b)(1). If the claimant is capable of performing her past relevant work, the Commissioner will find that she is not disabled. 20 C.F.R. § 404.1560(b)(3); § 416.920(f). The claimant bears the burden

of establishing that the impairment prevents her from performing past work. *Reynolds-Buckley*, 457 F. App'x at 863.

The ALJ found that plaintiff is a younger individual (43 years old on the alleged onset date) with a high school education. (R. 47.) The ALJ made the following findings regarding plaintiff's RFC:

> [T]he claimant has the residual functional capacity to perform light work . . . that is further limited by standing and walking four hours in an eight-hour workday with normal breaks. The claimant can occasionally use the lower left extremity for pushing and pulling and operation of foot controls, and frequently use the bilateral upper extremity for carrying, grasping, pointing, using the computer, pinching and writing. She can occasionally climb ramps and stairs, kneel, crouch or crawl, but can never climb ladders, ropes or scaffolds. The claimant can understand and remember simple instructions, sustain attention, concentration, persistence and pace in two-hour segments with customary breaks in an eight-hour workday, and can occasionally have contact with coworkers. She will be best suited for an independent workstation apart from coworkers, require a gradual introduction to changes in the work environment, and will be expected to miss one day of work per month due to limitations and the treatment for those limitations.

(R. 41.) The ALJ found that plaintiff's RFC restricts her from performing any past relevant work. (R. 47.)

### 5. Other Work in the National Economy

If the claimant establishes that she is unable to perform her past relevant work, the Commissioner must show that the claimant—in light of her RFC, age, education, and work experience—is capable of performing other work that exists in substantial numbers in the national economy. *Reynolds-Buckley*, 457 F. App'x at 863; *see also* 20 C.F.R.

9

§ 404.1520(c)(1); § 416.920(g). The regulations provide:

> If we find that your residual functional capacity does not enable you to do any of your past relevant work . . . we will use the same residual functional capacity assessment when we decide if you can adjust to any other work.  We will look at your ability to adjust to other work by considering your residual functional capacity and the vocational factors of age, education, and work experience . . . . Any other work (jobs) that you can adjust to must exist in significant numbers in the national economy (either in the region where you live or in several regions in the country).

20 C.F.R. § 404.1560(c)(1); § 416.960(c)(1). If the claimant is not capable of performing such other work, the Commissioner must find the claimant disabled. 20 C.F.R. § 404.1520(g); § 416.920(g).

The ALJ consulted a Vocational Expert ["VE"] to determine whether any jobs exist in the national economy that plaintiff could perform, considering her RFC, age, education, and work experience. The VE testified that an individual with plaintiff's limitations and vocational factors could perform the jobs of inspector, sorter, and gluer, which are jobs that exist in significant numbers in the national economy. (R. 48.)

Because the ALJ found that jobs consistent with plaintiff's RFC and vocational factors exist in significant numbers, the ALJ found that plaintiff was not disabled. (*Id.*)

**B. MS. SMITH'S CLAIMS**

Plaintiff raises three issues on appeal: (1) whether the ALJ properly assessed the credibility of plaintiff's testimony regarding pain and depression; (2) whether the ALJ appropriately weighed the medical opinion of Dr. Haney; and (3) whether the ALJ considered the combined effects of plaintiff's multiple impairments. (Doc. 9 at 4, 9, 12.)

10

### 1.  Credibility of Plaintiff's Statements

First, plaintiff alleges that the ALJ failed to credit her testimony regarding pain and debilitating depression and, in refusing to credit her testimony, the ALJ failed to properly consider her complete medical history. (Doc. 9 at 4-12.) Specifically, plaintiff contends that her daily activities did not constitute substantial evidence on which the ALJ could rely to discredit her testimony, that the ALJ failed to consider plaintiff's medical history of disabling back pain in finding plaintiff's testimony not credible, and that the ALJ erred in finding plaintiff's allegations of disabling depression not credible. (*Id.*)

SSR 96-7p explains the two step process set out in 20 C.F.R. § 404.1529 and § 416.929 that the ALJ must follow[7]: "First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment—i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques—that could reasonably be expected to produce the individual's pain or other symptoms." This determination does not consider the "intensity, persistence, or functionally limiting effects of the individual's symptoms." SSR 96-7p. If the ALJ finds that the

---

[7] Apparently the Eleventh Circuit considers the standard set out in the regulations and the standard in *Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir.1991), as one and the same. *Wilson v. Barnhart*, 284 F.3d 1219, 1226 (11th Cir. 2002) ("Furthermore, the ALJ cites to 20 C.F.R.§ 404.1529, which contains the same language [as *Holt*] regarding the subjective pain testimony that this Court interpreted when initially establishing its three-part pain standard. In citing to § 404.1529 and based on the findings and discussion, it is clear that the ALJ applied this Circuit's pain standard [from *Holt*]."). Because SSR 96-7p offers an in-depth explanation of the regulations and is more recent than *Holt*, the court looks to it for guidance.

plaintiff's case survives the first step, then

> the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record.

SSR 96-7p.

The ALJ found that, under step one, "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms," but under step two, "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." (R. 45.) To discredit plaintiff's testimony of pain and depression, the ALJ relied on reports of plaintiff's daily activities and plaintiff's inconsistent statements, as well as plaintiff's medical history.

The ALJ found that plaintiff "has described daily activities, which are not limited to the extent one would expect, given her complaints," and that plaintiff "has admitted certain abilities and engaged in activities, which provide support for the residual functional capacity in this decision." (R. 45.) The ALJ found plaintiff's testimony of disabling pain and depression inconsistent with a Function Report, in which plaintiff stated that she prepares meals daily, sometimes does laundry, drives occasionally, shops for short periods of time at

the grocery store, attends church weekly, and maintains her personal hygiene without assistance. (R. 45, 200-03.) The ALJ also relied on inconsistent testimony from an Employer Questionnaire and a Third Party Function Report completed by plaintiff's mother in discrediting plaintiff's testimony.

First, the court notes that plaintiff's daily activities are largely consistent with plaintiff's testimony. For example, plaintiff stated that, while she used to prepare full course meals, she prepares meals that take only "10 minutes or less" since her impairments began. (R. 201.) Additionally, plaintiff stated in her Function Report from February 2011 that she drives "sometimes," (R. 202), but in the hearing on May 27, 2012, plaintiff clarified that she no longer drives because of two car accidents she had after being diagnosed with Graves' disease, (R. 78). Plaintiff's activities of occasionally doing laundry and grocery shopping and taking care of her personal hygiene also do little to discredit plaintiff's testimony that she experiences pain throughout the day. "[A]n applicant need not be completely bedridden or unable to perform any household chores to be considered disabled," *Easter v. Bowen*, 867 F.2d 1128, 1130 (8th Cir. 1989), and this court does not "believe that participation in everyday activities of short duration, such as housework or fishing, disqualifies a claimant from disability or is inconsistent with the limitations recommended by [the claimant's] treating physicians," *Lewis v. Callahan*, 125 F.3d 1436, 1441 (11th Cir. 1997).

Additionally, the ALJ considered an Employer Questionnaire, completed by plaintiff's former employer, Steel Case, which reported that, while an employee, plaintiff maintained

satisfactory work attendance, performed an ordinary work routine without supervision, understood and carried out simple one and two-step tasks and detailed instructions, and maintained concentration for extended periods of time. (R. 45, 219-20.) Contrary to Steel Case reporting that plaintiff maintained a satisfactory work attendance, plaintiff testified that she would "stay off from work more than [she] worked when [she] was there." (R. 64, 219.) Plaintiff also testified that she "could barely make it back to [her] car" after work because of chronic back pain. (R. 45, 64.) While plaintiff's testimony appears inconsistent with the Employer Questionnaire, the Questionnaire provides little relevant evidence of plaintiff's abilities, considering plaintiff worked at Steel Case before her alleged disability onset date.

The ALJ also considered a Third Party Function Report completed by plaintiff's mother, which states that plaintiff "sleeps a lot." (R. 46, 224.) The ALJ compared this statement with plaintiff's statements that "the medication makes me sleepy and drowsy sometimes," (R. 46, 202), and that "it might seem like I'm sleeping, but I'm really not sleeping," (R. 46, 77). The sleeping habits described by plaintiff's mother are not inconsistent with plaintiff's testimony. Plaintiff testified that it may appear as if she is sleeping even when she is not. Plaintiff's mother may have incorrectly believed plaintiff was sleeping at night and testified according to her inaccurate perception of plaintiff's sleeping habits. Furthermore, the fact that medication makes an individual drowsy is not determinative of getting natural and habitual restful sleep.

14

The ALJ also pointed to inconsistencies between plaintiff's statements about her symptoms and testimony from the Function Report completed by plaintiff's mother. Plaintiff testified that her medication made her sleepy, she spent her days lying around in pain, she woke up every hour with pain, she stayed to herself because of mood swings, she went outside infrequently, and she had a difficult time sitting for more than five minutes. (R. 46, 71, 199, 202, 204.) However, plaintiff's mother testified that plaintiff spent time with people who came to visit and would "join in the conversation every once in a while," that plaintiff did not have to be reminded to go places because "she really loves to go," and that plaintiff attended church almost every Sunday and sometimes on Wednesday nights. (R. 46, 228.) The Third Party Function Report completed by plaintiff's mother is inconsistent with plaintiff's complaints of disabling pain and provides at least some evidence to discredit plaintiff's testimony. But even if plaintiff's daily activities, as reported by plaintiff and her mother, do not constitute substantial evidence, the ALJ relied on additional evidence in discrediting plaintiff's testimony.

The ALJ considered Dr. Troy Layton's treatment records for plaintiff's knee osteoarthritis. (R. 40, 42, 272-77.) Despite plaintiff's testimony that constant pain prevents her from working, (R. 64), plaintiff told Dr. Troy Layton that she was ready to return to work "full duty" on February 4, 2010, almost a week after the alleged onset date of plaintiff's disability, and Dr. Layton permitted plaintiff to return to work without restrictions on March 2, 2010, although plaintiff did not actually return to work, (R. 274). During a follow-up

appointment on March 12, 2010, Dr. Layton noted that plaintiff "is doing well. Everything looks good. The pain is absent." (R. 273.) The ALJ relied on substantial evidence in finding that plaintiff's allegations of pain are not as limiting as alleged.

Additionally, the ALJ considered plaintiff's medical history of lower pain back. The ALJ noted that two magnetic resonance imagining ("MRI") scans of plaintiff's lumbar spine—from August 27, 2009 and April 23, 2010—revealed "bulging discs at the L3-4, L4-5, and L5-S1 levels with neuroforaminal narrowing and spinal stenosis." (R. 43, 263, 270.) Because the MRI scans revealed degenerative disc disease, Dr. Cheng Tao recommended surgery involving an anterior lumbar interbody fusion at the L4-5 and L5-S1 levels. (R. 256.) Plaintiff initially agreed to undergo surgery, even after learning of the attendant risks, but later decided not to undergo surgery after Dr. Bobby Johnson diagnosed plaintiff with Graves' disease. (R. 256, 259, 348; *see* R. 72.) Even though hyperthyroidism from Graves' disease would increase the risks from surgery, Dr. Johnson explained to plaintiff that surgery "was still safe if everyone was prepared," (R. 40, 348), and plaintiff testified that her doctor still recommended surgery, (R. 66). While the ALJ credited plaintiff's testimony that she experiences significant lower back pain, the ALJ did not fully credit plaintiff's statements about the intensity, persistence, and limiting effects of the pain, given that plaintiff chose not to undergo surgery. The ALJ relied on substantial evidence in making this finding.

Regarding plaintiff's testimony about her depression, the ALJ considered plaintiff's limited treatment history and plaintiff's inconsistent statements about the effectiveness of her

medication. (R. 46.) Plaintiff testified that she has "major depression" and that she has bad days "four to five times a week," which consist of "not getting up out of the bed and just not wanting to live." (R. 73, 79.) The ALJ noted, however, that plaintiff had a conservative treatment history for depression. (R. 46.) Plaintiff attended five counseling sessions through her previous employer's referral in 2011, (R. 75), and had received treatment from Alabama Psychiatric Services for only a few months, (*Id*.). Plaintiff's conservative treatment history provides substantial evidence to discredit her allegations regarding the limiting effects of her depression. *See Wilson v. Barnhart*, 284 F.3d 1219, 1223 (11th Cir. 2002) (citing the lack of significant medical treatment as one consideration in finding that plaintiff did not meet part two of the pain standard).

The ALJ also compared plaintiff's testimony that her medication was not helping, (R. 46, 74), with conflicting testimony that Cymbalta was "helping a little bit," (R. 46, 75), and with plaintiff's statements to Alabama Psychiatric Services on January 18, 2012 that "I'm doing okay . . . some better," and that "individual therapy has helped," (R. 46, 441). While plaintiff is correct that a report from March 6, 2012, in which plaintiff's therapist rated plaintiff's overall progress as poor, shows severe depression, (Doc. 9 at 11 (citing R. 437)), the ALJ relied on substantial evidence to find that plaintiff's severe depression is not as limiting as alleged.

17

**2. Weight Given to Medical Opinion of Dr. Haney**

Plaintiff next challenges the ALJ's decision to give Dr. Haney's opinion only "some weight" when assessing plaintiff's mental impairments. (Doc. 9 at 12; R. 44.) The ALJ concluded that Dr. Haney's opinion would be given only some weight because "it was only somewhat consistent with the limitations outlined in the residual functional capacity." (R. 44). "[T]he testimony of a treating physician must be given substantial or considerable weight unless 'good cause' is shown to the contrary." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). "[G]ood cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records." *Phillips v. Barnhart*, 357 F.3d 1232, 1241 (11th Cir. 2004) (internal quotations omitted).

Dr. Haney found that plaintiff's "[a]bility to function in most jobs appeared moderately to severely impaired due to physical and emotional limitations." (R. 406.) During a clinical interview, Dr. Haney noted that plaintiff "had difficulty with most . . . simple problems in change making and arithmetic" and could not recall any of three objects after only five minutes had passed. (R. 405.)  Based on this evaluation, Dr. Haney estimated plaintiff's intelligence "at the low average range." (*Id.*) The ALJ concluded that Dr. Haney's assessment "was only somewhat consistent with the limitations outlined in the residual functional capacity" because internal inconsistencies existed within Dr. Haney's own medical records and the record as a whole. (R. 44.) For example, after noting that plaintiff "had

difficulty with simple math and change making, Dr. Haney contradictorily noted that plaintiff "seemed able to manage her own funds, should any be awarded to her." (R. 405.)

Dr. Rodrigues, a reviewing doctor, stated that "[a]lthough Haney noted the validity of the assessment, I question it. For someone with 16 years of education[8] and only some limitations noted on the [activities of daily living assessments], you would expect for this person to be able to at least count forward by two using her fingers. It is possible that her pain medication was affecting her functioning during the assessment." (R. 407.) Dr. Rodrigues also noted, "There is no evidence of a head injury . . . that would impair her ability that significantly." (R. 430.) Dr. Haney's observations were also inconsistent with Function Reports on plaintiff's daily activities. Contrary to Dr. Haney's finding that plaintiff had difficulties counting change and doing simple arithmetic, plaintiff and her mother both testified within months of Dr. Haney's evaluation that plaintiff was able to count change, handle a savings account, and use a checkbook and money orders. (R. 202, 227.)

Evidence supports findings contrary to Dr. Haney's conclusion that plaintiff's intelligence level is at "the low average range" and that her impairments substantially affect her ability to work. Therefore, the ALJ did not err in assigning less weight to Dr. Haney's opinion.

---

[8] In a Disability Report, plaintiff reported that the highest grade of school completed was "4 or more years of college." (R. 190.)

### 3. Combination of Impairments

Plaintiff's last argument is that the ALJ did not properly consider the combined effects of her impairments. (Doc. 9 at 12.) At step two in the five-step sequential evaluation process, the Secretary must determine whether a claimant has a severe impairment or combination of impairments that significantly limits a claimant's ability to function. *See* 20 C.F.R. § 416.920(c). "The plain language of the regulations makes it clear that the Secretary must consider the combined effect of a claimant's alleged impairments in sequential evaluation step two." *Davis v. Shalala*, 985 F.2d 528, 532 (11th Cir. 1993). At step three in the sequential evaluation, "the regulations require the Secretary to consider the combined impact of a claimant's impairments when determining whether the claimant equals the requirements for a listed impairment." *Id*. at 534. Therefore, at steps two and three, the Secretary must consider a claimant's impairments in combination before moving to the next step.

At step two, the ALJ concluded that plaintiff had the following severe impairments: "bilateral carpal tunnel syndrome (CTS), osteoarthritis of the bilateral knees, hypothyroidism due to Graves' disease, lumbar degenerative disc disease (DDD), depressive disorder and pain disorder." (R. 38.) At step three, the ALJ concluded that plaintiff did not have "an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments." (R. 39.) Specifically, the ALJ found that "[t]he severity of the claimant's mental impairments, considered singly and in combination, do not meet or medically equal the criteria of listings 12.04 (Affective disorder), and 12.07 (Somatoform

disorders)." (R. 40.) The ALJ also found that plaintiff's impairments did not meet or equal listings 1.02 (major dsyfunction of a joint(s) due to any cause) or 1.04 (disorders of the spine). (R. 39-40.)

Where an ALJ expressly finds that a plaintiff does not have an  impairment or combination of impairments that meets or equals a listing, the Eleventh Circuit has held that the ALJ satisfied the duty to consider a plaintiff's impairments in combination. *See Hutchinson v. Astrue*, 408 F. App'x 324, 327 (11th Cir. 2011); *Jones v. Dep't of Health & Human Servs.*, 941 F.2d 1529, 1533 (11th Cir. 1991). Therefore, the court finds that the ALJ properly evaluated plaintiff's multiple impairments singly and in combination throughout the decision.

## IV. CONCLUSION

Based on the reasons set forth above, the decision of the ALJ, as adopted by the Commissioner, denying plaintiff's claim for a period of disability and DIB is due to be affirmed. An Order affirming the decision of the Commissioner will be entered contemporaneously with this Memorandum Opinion.

**DONE** this the 23rd day of December, 2014.

Sharon Lovelace Blackburn
_____
SHARON  LOVELACE  BLACKBURN
UNITED STATES DISTRICT JUDGE